**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Robert Milton, individually and on behalf of all others similarly situated,

Plaintiff,

v.

ASAPP, Inc.,

Defendant.

Case No. 1:25-cv-04677-LLS-RFT

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ....... 1

II. BACKGROUND ....... 2

III. LEGAL STANDARD ....... 5

A. Rule 8(a) Standard ....... 5

B. Rule 12(b)(1) Standard ....... 5

C. Rule 12(b)(6) Standard ....... 5

IV. ARGUMENT ....... 6

A. The Airline Deregulation Act Preempts Plaintiff's Application of CIPA ....... 6

1. Plaintiff Seeks to Regulate an Airline Service ....... 7

a) ASAPP's activity implicates an airline service. ....... 7

b) ASAPP's service directly impacts JetBlue's customer service. ....... 8

c) ASAPP's services were reasonably necessary to JetBlue's customer service ....... 9

B. Plaintiff Has No Standing Under Article III of the Constitution ....... 10

1. Plaintiff Has Not Suffered an Injury In Fact. ....... 10

C. Plaintiff Makes No Allegations Regarding the Contents of His Communication, As Is Required Under CIPA Section 361 ....... 14

D. Plaintiff's Alleged Communications With JetBlue Were Not Confidential Under Section 362 of CIPA ....... 16

V. CONCLUSION ....... 18

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
671 F.3d 140 (2d Cir. 2011)....................5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................5, 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................5, 6

*Boulton v. Community.com, Inc.*,
2025 WL 314813 (9th Cir. Jan. 28, 2025)....................17, 18

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020)....................15

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023)....................11, 14

*Cipollone v. Liggett Group, Inc.*,
505 U.S. 504 (1992)....................6

*Farash v. Cont'l Airlines, Inc.*,
574 F. Supp. 2d 356 (S.D.N.Y. 2008)....................7

*Gordon v. Amadeus IT Grp., S.A.*,
194 F. Supp. 3d 236 (S.D.N.Y. 2016)....................10

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022)....................11, 12

*In Lightoller v. Jetblue Airways Corporation*,
2023 WL 3963823 (S.D. Cal. June 12, 2023)....................12, 14

*In re Dayton*,
786 F. Supp. 2d 809 (S.D.N.Y. 2011)....................4

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013)....................16, 17

*In re Jetblue Airways Corp. Priv. Litig.*,
379 F. Supp. 2d 299 (E.D.N.Y. 2005)....................7, 9

*Ingersoll-Rand Co. v. McClendon*,
498 U.S. 133 (1990) ....................6

*Jones v. Ocwen Fed. Bank*,
147 F. Supp. 2d 219 (S.D.N.Y. 2001) ....................5, 12

*Jones v. Peloton Interactive, Inc.*,
720 F. Supp. 3d 940 (S.D. Cal. 2024) ....................15

*King v. Hard Rock Cafe Int'l (USA), Inc.*,
2025 WL 1635419 (E.D. Cal. June 9, 2025) ....................16

*Lien v. Talkdesk, Inc.*,
2025 WL 551664 (N.D. Cal. Feb. 19, 2025) ....................11, 12

*Lin v. Lin*,
2022 WL 16926295 (S.D.N.Y. Nov. 14, 2022) ....................13

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ....................5, 10

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) ....................11, 14

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992) ....................6

*Ndremizara v. Swiss Re Am. Holding Corp.*,
93 F. Supp. 3d 301 (S.D.N.Y. 2015) ....................4

*Northwest, Inc. v. Ginsberg*,
572 U.S. 273 (2014) ....................6

*Pica v. Delta Air Lines, Inc.*,
2019 WL 1598761 (C.D. Cal. Feb. 14, 2019) ....................7, 10

*Rombom v. United Air Lines, Inc.*,
867 F. Supp. 214 (S.D.N.Y. 1994) ....................7, 8, 9

*Rothman v. Gregor*,
220 F.3d 81 (2d Cir. 2000) ....................4

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ....................10, 11, 13, 14

*Terrill v. Dialpad, Inc.*,
3:25-cv-04509 (N.D. Cal.) ....................4, 13

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................2, 11, 14

*Weiss v. El A. Israel Airlines, Ltd.*,
471 F. Supp. 2d 356 (S.D.N.Y. 2006)....................9

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023)....................16

**STATUTES**

49 U.S.C. § 41713(b)(1)....................1, 6

Cal. Penal Code § 631....................14

Cal. Penal Code § 632(c)....................16

**RULES**

Fed. R. Civ. P. 8(a)(2)....................5

Fed. R. Civ. P. 12(b)(1)....................1

Fed. R. Evid. 201(b)....................4

Defendant ASAPP, Inc. ("ASAPP") respectfully submits this memorandum of law in support of its motion to dismiss the complaint filed by Plaintiff Robert Milton (Dkt. 1, "Complaint" or "Compl." attached as Rubin Decl. Ex. 1) pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6).

## I. INTRODUCTION[1]

Plaintiff Robert Milton ("Plaintiff") alleges that ASAPP violated the California Invasion of Privacy Act ("CIPA") with only the most bare allegations that fall far short of the pleading requirements in federal court. Plaintiff alleges that ASAPP recorded his phone call to JetBlue Airways Corporation ("JetBlue") using "conversation intelligence" software that ASAPP provides to JetBlue to facilitate its customer service processes. Compl. ¶¶ 1-2. Plaintiff provides no detail whatsoever regarding the length, purpose, or nature of the call or whether any information was actually exchanged during the conversation—information that Plaintiff invariably has in his possession. Indeed, Plaintiff's allegations are entirely consistent with Plaintiff calling JetBlue and immediately hanging up before providing any information at all. Meanwhile, as Plaintiff alleges, JetBlue told all customers that "this call may be recorded for training and quality assurance" at the outset of all calls providing ample warning of recording. *Id.* ¶ 7.

In any event, Plaintiff's claims fail for four independent reasons, and these deficiencies cannot be cured by an amendment:

*First,* Plaintiff's application of CIPA in this case is expressly preempted by the Airline Deregulation Act, 49 U.S.C. § 41713(b)(1) ("ADA"), which preempts any state "law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air

---

[1] Unless otherwise indicated, citations and quotations are omitted, emphasis is added. Citations to "Rubin Decl. Ex. __" refer to exhibits attached to the Declaration of Michael H. Rubin, submitted herewith.

carrier." In light of the ADA's broad preemption provision, Plaintiff's state law claims targeting airline customer service must be dismissed.

*Second*, Plaintiff lacks Article III standing to bring a claim in federal court. Plaintiff's bare allegations that he called JetBlue within the last 12 months and that the call was recorded does not implicate a cognizable privacy right and thus no concrete injury. Plaintiff alleges mere technical statutory violations of CIPA, which are insufficient for standing under *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021).

*Third*, Plaintiff's claims under Section 631 of CIPA fail because he has failed to make any allegations regarding the contents of the communication at issue, as is required under Section 631. Plaintiff's allegations amount to nothing more than conclusory assertions that his phone call with JetBlue was confidential, which fall far short of pleading requirements.

*Fourth*, Plaintiff's claim under Section 632 of CIPA fails because Section 632 applies only to "confidential communications," which exclude communications that Plaintiff knows may be recorded. Plaintiff was aware that his call with JetBlue may be recorded for training and quality assurance purposes, and he cannot now claim an expectation of privacy with respect to such a recording.

For these reasons, ASAPP respectfully requests that the Court dismiss the Complaint without leave to amend.

## II. BACKGROUND

Plaintiff alleges that ASAPP provides JetBlue with its "conversation intelligence software-as-a-service" in connection with JetBlue's customer support services. Compl. ¶¶ 1-2. ASAPP's software allegedly uses "generative artificial intelligence," or "generative AI," to "identify patterns and trends within high-volume customer call centers." *Id.* ¶ 24. In particular, Plaintiff alleges that the services ASAPP offers to JetBlue include AutoTranscribe, AutoAssist, and AutoSummary. *Id.*

AutoTranscribe is a "speech-to-text" transcription service that allows JetBlue to transcribe phone calls and enables JetBlue to perform "QA" (short for quality assurance) and extract insights from its customers interaction with support specialists. *Id.* ¶ 25. AutoAssist also operates during customer calls to provide "real-time recommendation and prompts to support agents automatically." *Id.* ¶ 27. Through ASAPP's machine learning capabilities, the AutoAssist program is able to analyze interactions to determine the most effective words and actions in response to particular customer prompts, such that it can successfully guide agents "on what to do and say." *Id.* Once a call concludes, AutoSummary "generates conversation summaries" and facilitates custom data extraction that JetBlue can use to "understand customer calls and enhance [key performance indicators]" in its customer service. *Id.* ¶ 26. AutoSummary can also provide "detailed insights into customer sentiment," which JetBlue can use to identify what drives customer sentiment and improve its customer service. *Id.*

As detailed in the Complaint, ASAPP publicly touts the effectiveness of its services that allowed JetBlue to "transform the customer service experience." *Id.* ¶ 2. All told, ASAPP's services "saved JetBlue crewmembers an average of 280 seconds per conversation." In the first quarter of 2023 alone, this efficiency "translated into significant savings of 73,000 workforce hours." *Id.*

As Plaintiff alleges, when customers call JetBlue they are informed that "this call may be recorded for training and quality assurance." *Id.* ¶ 7. Curiously, Plaintiff also claims that he expected his conversation would be "only between himself and JetBlue." *Id.* ¶ 9. Plaintiff continues to allege that in providing services to JetBlue, ASAPP "recorded and transcribed [Plaintiff's] conversation in real time" and that the communication was "confidential." *Id.* ¶ 10.

These allegation are the entirety of Plaintiff's allegations relating to his purported phone call with JetBlue. Plaintiff has not made a single allegation regarding the purpose, length, nature, or content of the phone call. Plaintiff has not even specified the year in which the purported call occurred, alleging only that it occurred "within the last 12 months from the filing of th[e] Complaint," which was on June 4, 2025. *Id.* ¶ 9.

In addition to Plaintiff's bare allegations regarding his alleged call, he makes general allegations regarding the nature of calls to JetBlue made by absent members of the putative class. Plaintiff alleges that these individuals called the JetBlue customer service line to "retrieve information, schedule service appointments, make changes to subscriptions, and receive additional forms of customer support." *Id.* ¶ 3. These allegations, which on their face make no sense in the context of airline customer support, are more understandable when other complaints filed by Plaintiff's counsel are examined: it turns out they were copied verbatim from another, unrelated CIPA case Plaintiff's counsel filed. *See* Rubin Decl. Ex 2, Compl. ¶ 3, *Terrill v. Dialpad, Inc.*, 3:25-cv-04509 (N.D. Cal.).[2]

[2] ASAPP requests that the Court take judicial notice of the Complaint filed by Plaintiff's counsel in the United States District Court of the Northern District of California in *Terrill v. Dialpad, Inc.* The "Court may take judicial notice of pleadings filed in other cases in deciding a motion to dismiss without converting that motion into a motion for summary judgment." *Ndremizara v. Swiss Re Am. Holding Corp.*, 93 F. Supp. 3d 301, 314 (S.D.N.Y. 2015); *see also Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of a complaint filed in another action as a public record pursuant to Federal Rule of Evidence 201(b)). To be clear, ASAPP seeks judicial notice to show that certain allegations in the instant Complaint were copied verbatim from the *Terrill* Complaint. ASAPP takes no position as to the truth of the allegations in the *Terrill* Complaint—nor is the truth relevant for purposes of this matter. *See In re Dayton*, 786 F. Supp. 2d 809, 814 (S.D.N.Y. 2011) (stating the court should take judicial notice to determine what statements the documents contain, but "not for the truth of the matters asserted").

# III. LEGAL STANDARD

## A. Rule 8(a) Standard

Under Rule 8(a) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement ensures that a defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). This requires "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* Indeed, allegations that are "so baldly conclusory that they fail to give notice of the **basic events and circumstances of which the plaintiff complains**, are meaningless as a practical matter and as a matter of law are insufficient to state a claim." *Jones v. Ocwen Fed. Bank*, 147 F. Supp. 2d 219, 224 (S.D.N.Y. 2001) (emphasis in original).

## B. Rule 12(b)(1) Standard

As the party invoking the Court's jurisdiction, Plaintiff bears the burden of establishing the elements of standing, including that Plaintiff has suffered an injury. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). To survive a motion to dismiss under Rule 12(b)(1), Plaintiff must, at minimum, plead "general factual allegations of injury resulting from the defendant's conduct." *Id.*; *see also Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) ("[Plaintiff] must allege facts that affirmatively and plausibly suggest that it has standing to sue" to survive a 12(b)(1) motion.).

## C. Rule 12(b)(6) Standard

Plaintiff similarly bears the burden to plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss under Rule 12(b)(6), those "well-pleaded facts" must "permit the court

to infer more than the mere possibility" of a claim. *Id.* at 679. They must "show[]" that the pleader is entitled to relief. *Twombly*, 550 U.S. at 570.

## IV. ARGUMENT

### A. The Airline Deregulation Act Preempts Plaintiff's Application of CIPA

Consistent with the Supremacy Clause of the United States Constitution, federal law preempts state law with which it conflicts—leaving the state law "without effect." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992). To determine whether or not a particular federal law conflicts with a state law, Congressional intent is the "ultimate touchstone of pre-emption analysis." *Id.* Where Congress has "expressly included a broadly worded pre-emption provision" in a statute, the Court's "task of discerning congressional intent is considerably simplified." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990).

In passing the Airline Deregulation Act, Congress made explicit its intention to prevent any state law from regulating services provided by airlines. The ADA expressly preempts any state "law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). By preempting any state law *related to* a price, route, or service of an air carrier, the ADA expresses a "broad pre-emptive purpose," and any action under state law "having a connection with or reference to airline rates, routes, or services" will not stand. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383-84 (1992). There is no exception for state laws of general applicability simply because they do not explicitly refer to regulation of airlines in their text. This would be an "utterly irrational loophole" ignoring the sweeping preemptive language of the ADA. *Id.* at 386. An outcome to the contrary would run contrary to Congress's efforts to "ensure that the States would not undo federal deregulation with regulation of their own." *Id.* at 378; *see also Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 280 (2014).

**1. <u>Plaintiff Seeks to Regulate an Airline Service</u>**

To determine if an activity is related to an airline "service," courts in the Second Circuit undertake a three-part preemption analysis. *Rombom v. United Air Lines, Inc.*, 867 F. Supp. 214, 222 (S.D.N.Y. 1994) (Sotomayor, D.J.). Courts ask whether (i) the activity in question implicates a service; (ii) the claim affects the airline service directly or only tenuously; and (iii) the underlying conduct was reasonably necessary to the provision of the service. *Id.*

***a) ASAPP's activity implicates an airline service.***

Plaintiff plainly seeks to regulate an airline service—JetBlue's customer service. Courts are clear that customer service is an "airline service." Indeed, courts in the Second Circuit have held that customer service provided by JetBlue in particular constitutes an airline service for purposes of preemption under the ADA. *See In re Jetblue Airways Corp. Priv. Litig.*, 379 F. Supp. 2d 299, 315 (E.D.N.Y. 2005) ("This claim fits squarely within the range of state law actions that the Supreme Court concluded . . . are expressly preempted by the ADA, because it represents a direct effort to regulate the manner in which JetBlue communicates with its customers in connection with reservations and ticket sales, both of which are services provided by the airline to its customers."); *see also Farash v. Cont'l Airlines, Inc.*, 574 F. Supp. 2d 356, 366 (S.D.N.Y. 2008) (Customer service "clearly relates to an airline service" with respect to preemption under the ADA); *see also Pica v. Delta Air Lines, Inc.*, 2019 WL 1598761, at *9 (C.D. Cal. Feb. 14, 2019) (finding preemption where Plaintiff's claims concern "voice and chat services" in connection with "sales and support" for Delta Airlines and thus relate to Delta's "rates, routes, or services").

Plaintiff's allegations relate squarely to JetBlue's customer service. Plaintiff alleges that ASAPP's software was used to "analyze conversations as they happen and provides precise, real-time recommendations and prompts to agents during each conversation" with customers. Compl. ¶ 1. In particular, Plaintiff alleges that JetBlue integrated into its "customer support

experience" ASAPP's AutoTranscribe, AutoAssist, and AutoSummary services, which, among other things, guide customer service agents "on what to say and do." *Id.* ¶¶2, 24-27.

**b) *ASAPP's service directly impacts JetBlue's customer service.***

ASAPP's services directly impact JetBlue's customer service. Where the activity at issue only incidentally or tenuously affects the airline service—here, JetBlue's customer service—there is no preemption, and where the activity in question directly implicates a service, the preemption analysis proceeds. *See Rombom*, 867 F. Supp. at 222.

Plaintiff's allegations make clear that ASAPP's software directly implicates JetBlue's customer service. As Plaintiff alleges, JetBlue "employ[s]" ASAPP's conversation intelligence software, including its AutoTranscribe, AutoAssist, and AutoSummary programs, in its "customer service line." Compl. ¶¶ 1, 25-27. Specifically, as alleged, ASAPP's AutoTranscribe software allows JetBlue to transcribe phone calls and enables JetBlue to perform quality assurance and extract insights from its customers interaction with support specialists. *Id.* ¶ 25. ASAPP's AutoAssist also provides "real-time recommendations and prompts to support agents automatically." *Id.* ¶ 27. And once a call concludes, AutoSummary "generates conversation summaries" and facilitates custom data extraction that JetBlue can use to "understand customer calls and enhance [key performance indicators]" in its customer service. *Id.* ¶ 26. AutoSummary can also provide "detailed insights into customer sentiment," which JetBlue can use to identify what drives customer sentiment and improve its customer service. *Id.* Because ASAPP's services are so critical to efficient customer service at JetBlue, ASAPP "saved JetBlue crewmembers an average of 280 seconds per conversation." *Id.* ¶ 2. In the first quarter of 2023 alone, this efficiency "translated into significant savings of 73,000 workforce hours." *Id.* Indeed, as Plaintiff alleges, ASAPP's services "allow[ed] JetBlue to transform the customer support experience." *Id.* ¶ 2. ASAPP's software, which is central to the nature, content, and speed of JetBlue's communications

with customers, directly implicates JetBlue's customer service. *See e.g., In re Jetblue Airways Corp. Priv. Litig.*, 379 F. Supp. 2d at 316 ("[A]n attempt to regulate the representations and commitments that JetBlue makes in connection with reservations and ticket sales directly affects the airline's provision of those services.").

**c) *ASAPP's services were reasonably necessary to JetBlue's customer service.***

ASAPP's services were reasonably necessary—if not central—to JetBlue's customer service. Where conduct occurs during the course of the service in question or furthers the provision of the service in a reasonable manner, then regulation of such conduct is preempted. *See Rombom*, 867 F. Supp. at 222; *see also In re Jetblue Airways Corp. Priv. Litig.*, 379 F. Supp. 2d at 316 (finding preemption where the "complained-of conduct did occur in the course of the provision of the service of reservations and ticket sales"). This is a low bar that precludes preemption only when the activity at issue is "outrageous or unreasonable." *Rombom*, 867 F. Supp. at 222. For example, the ADA will not preempt a tort claim against a flight attendant who shot a passenger who refused to be quiet during the presentation of safety instructions. *See id.*; *see also Weiss v. El A. Israel Airlines, Ltd.*, 471 F. Supp. 2d 356, 362 (S.D.N.Y. 2006) (affirming dismissal based on ADA preemption where plaintiffs "allege no assault, battery, false arrest, false imprisonment, slander, or any similar action that could be described as outrageous or unreasonable"). Plaintiff makes no allegations of the sort in the Complaint.

As discussed above, *supra* section IV.A.1.b, ASAPP's services played a critical role in JetBlue's customer service—so much so that, as Plaintiff's allege, ASAPP's services "allow[ed] JetBlue to transform the customer support experience." Compl. ¶ 2.

The fact that Plaintiff has sued ASAPP (not JetBlue) does not change the preemption analysis. ADA preemption extends to state law claims against third parties that provide services to

airlines—not just airlines themselves. This was addressed in *Gordon v. Amadeus IT Grp., S.A.*, in which the court joined many federal courts in holding that ADA preemption is not confined to claims brought directly against airlines. 194 F. Supp. 3d 236, 244 (S.D.N.Y. 2016). The court reasoned that it "cannot be that while the ADA prohibits, for example, state guidelines on airline fare advertising to be enforced against airlines, it permits enforcement of the very same guidelines . . . against advertising agencies." *Id.; see also Pica*, 2019 WL 1598761, at *10 (citing *Gordon* and finding the ADA preempts claims against third-party that leverages artificial intelligence to provide voice and chat services related to sales and customer support for Delta Airlines). Similarly, here, Plaintiff cannot escape the broad preemption provision of the ADA by suing a non-airline third party where the underlying activity is an airline service.

**B. Plaintiff Has No Standing Under Article III of the Constitution**

Article III of the Constitution sets forth an "irreducible constitutional minimum" of standing requiring that Plaintiff demonstrate "(1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Lujan*, 504 U.S. at 650; *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Where there is no standing, there is no case or controversy to be adjudicated by the court. *Spokeo*, 578 U.S. at 338. Indeed, "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Id.* at 337.

**1. <u>Plaintiff Has Not Suffered an Injury In Fact.</u>**

To plead an injury in fact, Plaintiff must show that he has suffered "an invasion of a legally protected interest which is (a) concrete and particularized [] and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. Concrete injuries are injuries that bear a "close relationship" to a harm "traditionally" recognized as providing a basis for a lawsuit in

American courts. *TransUnion*, 594 U.S. at 424. For example, "traditional tangible harms" such as physical or monetary harms are "obvious" examples of concrete injuries. *Id.* at 425. Certain intangible harms, such as reputational harms, disclosure of private information, and intrusion upon seclusion, bear a "close relationship" to harms traditionally in American courts and thus qualify as concrete injuries. *Id.* Importantly, Plaintiff cannot show a concrete harm by pointing merely to an alleged statutory violation. *See Spokeo,* 578 U.S. at 331 ("[P]laintiff does not automatically satisfy the injury-in-fact requirement whenever a statute grants a right and purports to authorize a suit to vindicate it. Article III standing requires a concrete injury even in the context of a statutory violation."); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 863 (S.D. Cal. 2023) ("A legislature's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III."). Put simply, "[n]o concrete harm, no standing." *TransUnion*, 594 U.S. at 442.

Courts considering whether CIPA claims are tied to harms traditionally recognized by American courts look to the right to privacy, which captures harms such as disclosure of private information and intrusion upon seclusion. To "determine[e] whether there is a concrete injury in a case like this requires consideration of the nature of the [allegedly intercepted] information." *Lien v. Talkdesk, Inc.*, 2025 WL 551664, at *1 (N.D. Cal. Feb. 19, 2025). Specifically, to bear on Plaintiff's right to privacy, the information at issue must be sensitive and personal. *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023) (dismissing CIPA claim where "Plaintiff does not allege that she disclosed any sensitive information to Defendant, much less identify any specific personal information she disclosed that implicates a protectable privacy interest."); *see also I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1050 (N.D. Cal. 2022) (dismissing on standing grounds where the "Court finds an insufficient fit between the loss of information

alleged here and the common law privacy torts of private disclosure of private facts and intrusion upon seclusion.”).

For example, in *Lien v. Talkdesk,* the court found that “plaintiff’s phone numbers and questions they asked about store hours, events, and products carried by the retailers—is simply not private or personal enough to confer standing.” 2025 WL 551664 at *1. Similarly, in *I.C. v. Zynga, Inc.*, the court found that “basic contact information,” including email addresses, phone numbers, and usernames, is not sufficiently sensitive and personal. 600 F. Supp. 3d at 1049. Courts have even found that many customer communications with airlines in particular are not sufficiently personal or sensitive to confer standing. *In Lightoller v. Jetblue Airways Corporation,* the court concluded that no personal information was recorded where the communications specifically alleged in the complaint related only “information on flight pricing” because “[f]light pricing information is not personal information.” 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023).

Plaintiff allegations come nowhere close to establishing harm—much less a harm traditionally recognized by American courts, such as an infringement on the right to privacy. Plaintiff alleges only that he engaged in “confidential communications” when he “called JetBlue within the last 12 months from the filing of th[e] Complaint” and that he “expected that his conversation with JetBlue was only between himself and JetBlue,” even though JetBlue disclosed that the “call may be recorded for training and quality assurance.” Compl. ¶¶ 7, 9. Plaintiff makes no allegations regarding the purpose or length of the call or the sensitive nature of any information shared on the call, and his conclusory allegation that his call was “confidential” is “meaningless as a practical matter and as a matter of law [is] insufficient to state a claim.” *Jones v. Ocwen*, 147 F. Supp. 2d 219 at 224 (“Individual allegations . . . that are so baldly conclusory that they fail to give notice of the **basic events and circumstances of which the plaintiff complains**, are

meaningless as a practical matter and as a matter of law are insufficient to state a claim.") (emphasis in original). To be clear, Plaintiff's allegations are entirely consistent with Plaintiff calling JetBlue and immediately hanging up before speaking a word. These allegations amount to far less than the allegations in *I.C. v. Zynga, Inc.* and *Lien v. Talkdesk* (where the defendants allegedly recorded plaintiffs' basic contact information) and *Lightoller v. Jetblue Airways Corporation* (where defendant allegedly recorded a conversation regarding flight pricing), and in each case the court found that the information was not sufficiently personal to implicate the right to privacy or cause an injury in fact.

Separate from Plaintiff's allegations regarding his phone call with JetBlue, Plaintiff alleges that absent members of the putative class called JetBlue to "retrieve information, schedule service appointments, make changes to subscriptions, and receive additional forms of customer support." Compl. ¶ 3. *First*, these allegations are nonsensical and clearly baseless. As an airline, JetBlue does not "schedule service appointments" with customers and does not offer "subscriptions" of any sort. The court need not credit allegations that are "factually frivolous" and "clearly baseless" whether or not there are judicially noticeable facts available to contradict them. *Lin v. Lin*, 2022 WL 16926295, at *1 (S.D.N.Y. Nov. 14, 2022). As detailed above, these allegations do not even relate to this case and instead were copied verbatim from another, unrelated CIPA case that Plaintiff's counsel filed. *See* Rubin Decl. Ex 2, Compl. ¶ 3, *Terrill v. Dialpad, Inc.*, 3:25-cv-04509 (N.D. Cal.).

*Second*, Plaintiff's allegations regarding purported communications between JetBlue and absent members of the putative class are not relevant at this stage in the litigation. Plaintiff must show that he personally has been injured and has standing to bring this case. *See Spokeo*, 578 U.S. at 338 n.6 ("[N]amed plaintiffs who represent a class 'must allege and show that they personally

have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'"). He has not done so.

*Finally*, even if the court were to consider Plaintiff's general (and nonsensical) allegations regarding the nature of putative class member's communications with JetBlue, the communications still are not sufficiently personal and sensitive to show a concrete injury. Indeed, Plaintiff has made no showing whatsoever that "retriev[ing] information, schedule[ing] service appointments, mak[ing] changes to subscriptions, and receiv[ing] additional forms of customer support" required an exchange of any personal information whatsoever. *See Lightoller*, 2023 WL 3963823, at *4 ("Flight pricing information is not personal information."); *Byars*, 2023 WL 2996686, at *3 ("Plaintiff does not allege that she disclosed any sensitive information to Defendant, much less identify any specific personal information she disclosed that implicates a protectable privacy interest").

In sum, Plaintiff's allegations amount to nothing more than a technical statutory violation. *See Spokeo,* 578 U.S. at 331 ("Article III standing requires a concrete injury even in the context of a statutory violation."); *Noom*, 682 F. Supp. 3d at 863 ("A legislature's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III."). As stated by the Supreme Court in *TransUnion* "[n]o concrete harm, no standing." 594 U.S. at 442.

### C. Plaintiff Makes No Allegations Regarding the Contents of His Communication, As Is Required Under CIPA Section 361

Plaintiff has made no allegations regarding the contents of the communication that ASAPP allegedly recorded. Section 631(a) of CIPA prohibits the unauthorized acquisition of the "contents" of a communication. *See* Cal. Penal Code § 631 (West) (violations where any person "reads, or attempts to read, or to learn the contents or meaning of any message, report, or

communication"). The "contents" of a communication refers to "information concerning the substance, purport, or meaning of that communication." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020). In contrast, "record information," constitutes merely the characteristics of a message "generated in the course of the communication," such as "the source, destination, duration, and time of a call" and "the name, address and subscriber number or identity of a subscriber or customer." *Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940, 947 (S.D. Cal. 2024). Plaintiff must allege the contents of the communications at issue to survive a motion to dismiss. *Id.* at 946-47.

Plaintiff does not even attempt to describe the contents of his alleged phone call with JetBlue. The best Plaintiff could do is make broad and conclusory allegations that the call was "confidential" and that "ASAPP, through the Services, recorded and transcribed [his] conversation in real time." Compl. ¶ 10. But these allegations say nothing of the contents of the communication, as is required under Section 361 of CIPA. For example, in *Jones v. Peloton Interactive, Inc.*, Plaintiff alleged that Defendant was liable for its use of the third-party software embedded into a chat feature on its website. 720 F. Supp. 3d 940. But Plaintiff made only conclusory assertions that the third-party software captured the "full transcript of the conversation" and that the conversation was "private and deeply personal" without "identify[ing] enough facts about the content of the allegedly intercepted conversations to enable Defendants to defend itself effectively." *Id.* at 947. The court found that "[m]erely asserting that [third-party software] uses the information it collects even when it is private and deeply personal is insufficient." *Id.* The court dismissed the Complaint for failing to allege any detail regarding the contents of the communications at issue. *Id.* at 947-948 Plaintiff in the instant case has made no allegations regarding the contents of the communication at issue and thus has failed to state a claim under Section 361.

### D. Plaintiff's Alleged Communications With JetBlue Were Not Confidential Under Section 362 of CIPA

Section 362 applies only to persons who eavesdrop upon or record "confidential communication." *See King v. Hard Rock Cafe Int'l (USA), Inc.*, 2025 WL 1635419, at *5-6 (E.D. Cal. June 9, 2025) (dismissing claim under Section 362 where "Plaintiff has not pled that her communications were confidential as required for a claim under Section 632"). Confidential communications include communications "carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties" because there is an expectation of privacy in these communications. Cal. Penal Code § 632(c) (West). However, communications are not confidential in any circumstance in which the parties "may reasonably expect that the communication may be overheard *or recorded*." *Id*. There is no expectation of privacy where the parties understand they are being recorded because recordings can be "easily transmit[ted]" to "anyone else who has access to the internet." *In re Google Inc.*, 2013 WL 5423918, at *23 (N.D. Cal. Sept. 26, 2013) (granting motion to dismiss where "Plaintiffs have not alleged facts that lead to the plausible inference that the communication was not being recorded"). Thus, "[t]o prevail against a 12(b)(6) motion, then, the plaintiff would have to allege facts that would lead to the plausible inference that his was a confidential communication—that is, a communication that he had an objectively reasonable expectation was not being recorded."[3] *Id.* at

---

[3] There are narrow exceptions where the context of a communication renders it confidential even when recorded—though those exceptions do not apply here. For example, communications regarding health or medical information are confidential, even when recorded, because such information is "uniquely personal." Indeed, "[o]ne can think of few subject areas more personal and more likely to implicate privacy interests than that of one's health or genetic make-up." *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 974 (N.D. Cal. 2023). Plaintiff does not allege that the communication at issue fits in to the exception.

*22*; see also Boulton v. Community.com, Inc.*, 2025 WL 314813, at *2 (9th Cir. Jan. 28, 2025) (affirming dismissal because the communications at issue were recorded and thus not confidential).

Plaintiff's allegations make clear that his call with JetBlue was not confidential as he was aware that it would be recorded. As Plaintiff alleges, "JetBlue consumers are told: 'this call may be recorded for training and quality assurance.'" Compl. ¶ 7. And, as alleged, Plaintiff's calls are indeed recorded for training and quality assurance purposes. JetBlue uses ASAPP's AutoTranscribe technology because it enables JetBlue to perform "QA" (short for quality assurance) and extract insights from its customers interaction with support specialists. *Id.* ¶ 25. AutoAssist is used to provide "real-time recommendation and prompts to support agents" and analyze interactions to determine the most effective words and actions in response to particular customer prompts, such that it can successfully guide agents "on what to do and say." *Id.* ¶ 27. ASAPP's AutoSummary facilitates custom data extraction that JetBlue can use to "understand customer calls and enhance [key performance indicators]" in its customer service. *Id.* ¶ 26. AutoSummary can also provide "detailed insights into customer sentiment," which JetBlue can use to identify what drives customer sentiment and improve its customer service. *Id.* These functions all facilitate training and quality assurance, as disclosed by JetBlue at the outset of each call.

Plaintiff nonetheless claims that JetBlue's disclosure is insufficient because JetBlue did not clarify that the call may be shared with a third party for training and quality assurance purposes. But the law disagrees. When customer information is recorded with the customer's knowledge, there is no expectation of privacy because those recordings can be "easily transmit[ted]" to "anyone else who has access to the internet." *In re Google Inc.*, 2013 WL 5423918, at *23. In other words, because Plaintiff was warned that his call may be recorded for training and quality

assurance purposes and opted to proceed, he cannot now bring a CIPA claim because the recording was shared with a third party for training and quality assurance purposes. *See Boulton*, 2025 WL 314813, at *2 (affirming dismissal because the communications at issue were recorded and thus not confidential).

## V. CONCLUSION

For the foregoing reasons, ASAPP requests that the Court dismiss Plaintiff's Complaint without leave to amend.

Dated: July 28, 2025

**LATHAM & WATKINS LLP**

*/s/ Michael H. Rubin*
Michael H. Rubin (admitted *pro hac vice*)

505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: michael.rubin@lw.com

Daniel Grill (*admission pending*)
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-4754
Email: daniel.grill@lw.com

*Counsel for Defendant ASAPP, Inc.*

## CERTIFICATE OF COMPLIANCE

In accordance with Local Civil Rule 7.1(c), I certify that the foregoing Memorandum of Law is 5,516 words, exclusive of the caption page, table of contents, table of authorities, and signature block. The basis of my knowledge is the word count feature of the word-processing system used to prepare this memorandum.

Dated: July 28, 2025

*/s/ Michael H. Rubin*
Michael H. Rubin